# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7320 | **DATE** | 1/28/2004 |
| **CASE TITLE** | Edelson vs. Chien' | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Motion for Preliminary Injunction is denied. Plaintiff's Motion for Leave to Amend is granted with respect to proposed Count III only. Plaintiff's Count I is dismissed. Plaintiff is directed to file Amended Complaint by February 5, 2004.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 28 2004 | |
| | Notified counsel by telephone. | | date docketed | 27 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY EDELSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 7320 |
| ) | |
| RAYMOND K.F. CH'IEN, PETER YIP ) | |
| HAK YUNG, ASIA PACIFIC ONLINE ) | |
| LTD., and CHINADOTCOM ) | |
| CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Harry Edelson has moved for a preliminary injunction based on his Complaint for violations of Section 13(d) of the Securities Exchange Act (the "Act").[1] 15 U.S.C. § 78m(d). Plaintiff has also moved for leave to amend his Complaint in response to Defendant's motion to dismiss. For the reasons set forth below, Plaintiff's motion for preliminary injunction is denied. Further, because Section 13(d) does not provide a private cause of action for a Plaintiff such as Edelson, the Court dismisses Count I of Plaintiff's Complaint and denies Plaintiff's motion to file an Amended Complaint as to Counts I and II of the proposed Amended Complaint. With regard to Count III of Plaintiff's proposed Amended Complaint, Plaintiff's motion to amend is

---

[1] Plaintiff is not explicit as to what counts of his Complaint support his motion for preliminary injunction. From his briefs, however, it appears that his motion is based solely on the alleged violations of 13(d). During the pendency of the motion for preliminary injunction, Plaintiff filed a motion to amend his Complaint to include Chinadotcom in the tortious interference claim and to add an additional count under 13(d) requesting an injunction against Chinadotcom.

1



granted.

## BACKGROUND

Plaintiff Harry Edelson is a shareholder and former director of Defendant chinadotcom corporation ("Chinadotcom").[2] Chinadotcom is a Cayman Islands corporation headquartered in Hong Kong. Chinadotcom is an "integrated enterprise solutions company" publicly traded through the NASDAQ stock market. Defendant Peter Yip is also a shareholder of Chinadotcom, and is the company's Vice-Chairman and Chief Executive Officer ("CEO"). Defendant Ch'ien is Executive Chairman of Chinadotcom. Defendant Asia Pacific Online Limited ("APOL") is a Cayman Islands corporation headquartered in the Cayman Islands. APOL is owned by Yip's spouse and his children's trust. In turn, APOL owns a significant amount of Chinadotcom stock.

At least as early as 2003, Edelson openly disagreed with Yip and Ch'ien regarding the governance of Chinadotcom. In particular, Edelson alleges that he questioned the motives of management in connection with a stock repurchase program. In a series of board meetings and related email correspondence, Edelson contends that he expressed concerns that the stock repurchase represented a conflict of interest on the part of Yip and Ch'ien, who had acquired stock at prices lower than the proposed company buy-back. In an April 16, 2003, e-mail to Ch'ien, Edelson accused Chinadotcom management of "bulldozing" the board of directors and cited management's "defensive hostility" in the face of dissent.

Meanwhile, Chinadotcom was preparing to elect three directors, as the terms of Edelson and two other directors would expire in 2003. The board and management of Chinadotcom

---

[2] Both parties' briefs eschew capitalization in reference to Defendant chinadotcom. The Court uses an initial capital for ease of stylistic use.

2

nominated Edelson and the two other current directors for re-election, giving notice of this nomination to the shareholders on May 22, 2003. The Board recommended to the shareholders that they vote in favor of each re-election. Edelson, however, alleges that Yip and Ch'ien were merely "lying in wait." Edelson's Complaint asserts that Yip and Ch'ien "purported to concur with the Board's recommendation. . . ." but then voted their shares against Edelson's election. (R. 18-1, Am. Compl. ¶ 25.)

On June 17, 2003, a majority of the shares represented in the election voted against Edelson. Edelson now blames his loss on the unforeseen votes of Yip and Ch'ien. According to Edelson, his requests for more detailed information about the election results have gone unheeded by Chinadotcom. On October 15, 2003, Edelson filed this lawsuit. Plaintiff's Complaint alleges that Defendants Yip and APOL violated Section 13(d) of the Act by concealing their intention to affect the control of Chinadotcom. In a separate count of the proposed Amended Complaint, Plaintiff accuses Chinadotcom of a Section 13(d) violation for improperly recognizing the votes of Yip and Ch'ien. Plaintiff also accuses Defendants of tortious interference with prospective business advantage.

Plaintiff moved for a preliminary injunction requesting several types of relief. In response, Defendant Chinadotcom argues, among other things, that Section 13(d) does not provide a private cause of action for Plaintiff in this case. The Court agrees.

## LEGAL STANDARDS

### I. Preliminary Injunction

To obtain a preliminary injunction, a party must first show (1) that it has a reasonable likelihood of success on the merits of its underlying claim; (2) that it has no adequate remedy at

law; and (3) that it will suffer irreparable harm without the preliminary injunction. *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 803-804 (7th Cir. 2002) (citing *Anderson v. U.S.F. Logistics (IMC), Inc.*, 274 F.3d 470, 474 (7th Cir. 2001) and *Re/Max North Central, Inc. v. Cook*, 272 F.3d 424, 429-30 (7th Cir. 2001)). If a Plaintiff meets those burdens, the court then must consider any irreparable harm the preliminary injunction might impose upon the party against whom the injunction is sought and whether the preliminary injunction would harm or foster the public interest. *Id.* If the moving party cannot show a likelihood of success on the merits, a court may deny a motion for preliminary injunction without further discussion. *Id.* at 830 (citing *Platinum Home Mortgage Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 730 (7th Cir. 1998)).

As discussed below, Plaintiff Edelson cannot show a likelihood of success on the merits of his claim. Accordingly, the Court need not address the other factors relevant to a preliminary injunction analysis.

## II. Motion to Amend

Plaintiff also seeks to amend his Complaint. Courts generally address motions to amend the pleadings under a fairly liberal standard. *Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir. 1989). This standard, however, does not guarantee a right to amend. If an amended complaint would not survive a motion to dismiss or a motion for summary judgment, then the amendment would be considered futile, and the Court will not permit it for the sake of judicial efficiency. *See Brunt v. Service Employees Intern. Union*, 284 F.3d 715, 720-21 (7th Cir. 2002) ("Because Appellants' amended complaint would not survive a motion to dismiss, the amendment would be futile and the district court was well within its discretion in refusing to grant leave to amend.").

4

With respect to a motion to dismiss for failure to state a claim, a court will only grant such a motion if it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. Fed. R. Civ. P. 12(b)(6); *Delgado v. Jones,* 282 F.3d 511, 515 (7th Cir. 2002). In assessing a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint, and also draws all reasonable inferences from those facts in favor of the plaintiff. *First Ins. Funding Corp. v. Federal Ins. Co.,* 284 F.3d 799, 804 (7th Cir. 2002) (citing *Tobin for Governor v. Ill. State Bd. of Elections,* 268 F.3d 517, 521 (7th Cir. 2001)). Plaintiff cannot satisfy his pleading requirements, however, by merely attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims. *See Perkins v. Silverstein,* 939 F.2d 463, 466 (7th Cir. 1991); *Strauss v. City of Chicago,* 760 F.2d 765, 767-68 (7th Cir. 1985) (absence of facts supporting plaintiff's claim renders allegations mere legal conclusions subject to dismissal).

## ANALYSIS

### I. Section 13(d) Disclosure

Section 13(d) of the Act[3] creates certain filing obligations for any person who owns or acquires 5% or more of a class of publicly traded securities. If such a person does not hold the

---

[3] Section 13(d)(1) provides, *inter alia,* "any person who, after acquiring directly or indirectly the beneficial ownership of any equity security of a class which is registered pursuant to section 78l of this title . . . is directly or indirectly the beneficial owner of more than 5 per centum of such class shall, within ten days after such acquisition, send to the issuer of the security at its principal executive office, by registered or certified mail, send to each exchange where the security is traded, and file with the Commission, a statement containing such of the following information, and such additional information, as the Commission may by rules and regulations, prescribe as necessary or appropriate in the public interest of for the protection of investors . . . ."

Section 13(d)(2) requires filing of amendments upon "any material change in the facts set forth" in such statements.

securities "for the purpose or effect of changing or influencing the control of the issuer," then he need not file the comprehensive Schedule 13D disclosures, and may file the simpler Schedule 13G instead. SEC Rule 13d-1(c). If, however, the person intends to change or influence control of the issuer, SEC Rule 13d-1(e)(1) requires that person to file a Schedule 13D disclosing such intentions. Moreover, that person is precluded from voting or directing the voting of the described securities for ten days after the Schedule 13D is filed. SEC Rule 13d-1(e)(2).

Plaintiff seeks to enforce Section 13(d) and the accompanying SEC rules against Defendants Yip, APOL, and Chinadotcom. Reasoning that Yip never made the requisite Schedule 13D disclosure when he allegedly intended to remove Plaintiff from the board, Plaintiff contends that Section 13(d) and the SEC rules preclude Yip from voting his Chinadotcom shares. Accordingly, Plaintiff argues, Chinadotcom should have ignored Yip's improper votes. Defendant responds by meeting Plaintiff at the threshold of his argument. Defendant contends that Section 13(d) does not provide a private cause of action for Plaintiffs such as Edelson.

## II. Implied Private Causes of Action under Section 13(d)

In this case, Edelson attempts to enforce Section 13(d) as a stockholder and former director of Chinadotcom. He argues that he is entitled, as a shareholder, to a private right of action under Section 13(d). Defendant argues that the Seventh Circuit has recognized a right of action on the part of issuer corporations, but not for former directors who are also stockholders. The Court agrees that Section 13(d) does not grant a private right of action in this case.

### A. Implied Causes of Action Are Not Favored

It is undisputed that the express language of Section 13(d) does not provide a private cause of action by any person. The parties dispute whether or not a suit by Edelson is impliedly

6

allowed under this law. A party attempting to assert an implied right of action must overcome the "strong presumption [that] exists against the creation of an implied private right of action . . . ." *Endsley v. City of Chicago*, 230 F.3d 276, 281 (7th Cir. 2000). Nevertheless, "[a]lthough implied causes of action have fallen into disfavor, the Supreme Court has not yet forbidden them." *Knapp v. Eagle Prop. Mgmt. Corp.*, 54 F.3d 1272, 1277 (7th Cir. 1995). In the law of implied private causes of action, *Cort v. Ash*, 422 U.S. 66, 95 S. Ct. 2080, 45 L. Ed. 2d 26 (1975), is a seminal case. In that case, the Court established a four-factor test for determining whether a private right of action is implied.[4] The *Cort* test, however, has "fallen under severe criticism" by the Supreme Court, and may no longer stand as the test for implied rights of action. *Mallet v. Wis. Div. Of Vocational Rehab.*, 130 F.3d 1245, 1249 (7th Cir. 1997); *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 575, 99 S. Ct. 2479, 2489, 61 L. Ed. 2d 82 (1979); *Indiana Nat'l Corp.*, 712 F.2d at 1182.

Retreating from the full *Cort v. Ash* test, the Supreme Court has focused primarily on legislative intent to analyze potential implied rights of action. *Mallet*, 130 F.3d at 1249 (citing *Suter v. Artist M.*, 503 U.S. 347, 364, 112 S. Ct. 1360, 1370, 118 L. Ed. 2d 1 (1992)). "Without evidence of congressional intent to imply a private right of action, we will not address the remaining *Cort* factors because the plaintiff will have failed to show any ability to shift the presumption against its creation." *Mallet*, 130 F.3d at 1249. The threshold inquiry for an

---

[4] Courts considered the following factors under *Cort v. Ash*: (1) whether the plaintiff is a member of a class for whose especial benefit the statute was enacted; (2) whether there is any explicit or implicit indication of congressional intent to create or deny a private remedy; (3) whether a private remedy would be consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action is one traditionally relegated to state law. *Indiana Nat'l Corp. v. Rich*, 712 F.2d 1180, 1182 (7th Cir. 1983) (citing *Cort v. Ash*, 422 U.S. at 78).

7

implied right of action, therefore, is to determine whether Congress intended to provide one "in light of the statute's language, structure, and legislative history." *Id.*

### B.  No Implied Cause of Action Exists for Plaintiff

Beginning with the plain language of the statute, Plaintiff does not contend that any portion of the text of Section 13(d) implies legislative intent to provide a private cause of action. Absent evidence of an implied right of action in the plain language, the Court must address the statute's structure and history under the dictates of *Mallet*.

The Seventh Circuit analyzed implied private rights of action and Section 13(d) in the *Indiana National* case. *Indiana Nat'l Corp.*, 712 F.2d at 1182. In that case, an issuer corporation sued a group of investors, alleging that the investors filed a Schedule 13D that was misleading in several respects. In the district court, the defendants successfully argued that the plaintiff, as issuer of the stock, had no standing to assert a claim under Section 13(d) of the Act. *Id.* On appeal, the Seventh Circuit considered the narrow issue of whether an issuer corporation has an implied right of action under Section 13(d). *Id.*

To answer this question, the court pointed to the Supreme Court's opinion in *Cannon v. University of Chicago*, 441 U.S. 677, 694-703, 99 S. Ct. 1946, 1956-61, 60 L. Ed. 2d 560 (1979). Addressing implied rights in Title IX of the Education Amendments of 1972, the Supreme Court noted that Title IX had been patterned after Title VI of the Civil Rights Act of 1964, which had been construed by the courts as creating a private right of action. *Id.* The Supreme Court presumed that Congress was aware of the judicial decisions finding an implied right of action in Title VI, and therefore found that Congress must have intended to provide the same right in Title IX. *Id.* at 696-99. Using this reasoning, the Seventh Circuit noted that not only was Section

8

13(d) modeled on a statute in which courts had already found a right by implication (Section 14(a) of the Act, 15 U.S.C. § 78n), but Section 13(d) had itself been amended — after courts had found an implied right of action — without excluding such implication. *Indiana Nat'l*, 712 F.2d at 1183.

The Seventh Circuit's opinion includes a detailed analysis of the legislative history of Section 13(d), finding that "the purpose of the Williams Act was to insure that public shareholders facing a tender offer or the acquisition by a third party of a large block of shares possibly involving a contest for control be armed with adequate information about the qualifications and intentions of the party making the offer or acquiring the shares." *Id.* (citing *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S. Ct. 2069, 2075-76, 45 L. Ed. 2d 12 (1975)). "It is, of course, clear from the legislative history that Section 13(d) was not intended to protect incumbent management or to discourage takeover bids . . . . Its sole purpose was the protection of shareholders." *Indiana Nat'l*, 712 F.3d at 1185. Based on its analysis of the legislative history of Section 13(d), the Seventh Circuit found that the statute included an implied private cause of action for issuer corporations, who may "in this respect and for this limited purpose . . . act[] on the shareholders' behalf in bringing a suit for injunctive relief until an accurate Schedule 13(d) is filed." *Id.*

Two cases in distant districts are also informative on this issue. *See Nowling v. Aero Serv. Int'l, Inc.*, 752 F. Supp 1304 (E.D. La. 1990); *Mates v. N. Am. Vaccine, Inc.*, 53 F. Supp. 2d 814 (D. Md. 1999). The plaintiff in *Nowling* was a shareholder and former president and CEO of the defendant corporation. *Nowling* 752 F. Supp. at 1313. Holding that the plaintiff had no standing to sue under Section 13(d), the court noted the legislative intent to protect shareholders

9

and remarked that the plaintiff in that case "cannot simply be looked upon as a shareholder . . ." when he was president and CEO of the company. *Id.* The court noted that Section 13(d) was intended to protect the investing public, and not "ex-presidents or ex-board members who want to get back at their previous co-fiduciaries for disagreements or squabbles lost along the way."[5] *Id.*

In *Mates*, the District Court in Maryland addressed the question of whether Section 13(d) provided a private right of action to a former director of a corporation. The court considered whether the former director could be distinguished from the plaintiff in *Nowling* in that the *Mates* plaintiff did not have access to the relevant information in that case. *Mates*, 53 F. Supp. 2d at 825. The *Mates* court ultimately found that the former director did have access to the relevant information, but also pointed out that the main thrust of the plaintiff's suit was brought "in her individual capacity as a former board member, and not as a shareholder." *Id.* Finding that the former director did not have standing under Section 13(d), the court noted that the legislative history of the law showed an intent to protect "unsuspecting investors, and not well-informed members of management who can adequately protect their own interests." *Id.* (citing *Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 28-29, 97 S. Ct. 926, 942-43, 51 L. Ed. 2d 124 (1977)).

By his own account, Edelson was an active member of the Chinadotcom board of directors. In that role, he was privy to meetings that were not attended by common shareholders. Plaintiff's Complaint centers around Defendants' alleged misrepresentation in connection with the election of board members. Had he known that Defendants were planning to remove him,

---

[5] The *Nowling* court also noted that the plaintiff "had full access to the information that was considered regarding the proposed sales and participated in the voting." *Nowling*, 752 F. Supp. at 1313.

10

Edelson contends, he would have solicited proxies from the shareholders at large to prevent his ouster from the board. Plaintiff has alleged that such solicitation would likely result in his re-election. Although Plaintiff complains that key information was withheld from him, he falls short of showing that he is a member of the class that Section 13(d) was intended to protect.

Edelson's Complaint defines four types of injury that he claims to have sustained as a result of Defendants' alleged Section 13(d) violation.[6] Of these four injuries, only one relates to his role as a shareholder: Edelson claims to have been disenfranchised by Defendants because he, and other shareholders, did not know the election was contested. Edelson does not, however, contend that he refrained from voting his shares in reliance on the Defendants' representations. As a shareholder, then, it appears that Edelson would have done nothing differently had he known of the Defendants' alleged scheme. Rather, he contends that he would have sought proxies in order to offset Yip's large voting blocks. Although Plaintiff claims to have been disenfranchised, he does not claim that his votes were not cast and counted. His injury, therefore, appears to be more appropriately viewed as an injury to a former director and not to a shareholder. As such, Edelson's claim is not impliedly allowed by Section 13(d).

This result is in line with the reasoning of the Seventh Circuit in the *Indiana National* case. That opinion merely recognized a private right of action on the part of issuer corporations.

---

[6] "The § 13 violation of Yip and APOL caused irreparable injury to Edelson in that it (without limitation): (a) resulted in an illegal and improper removal of Edelson from the chinadotcom Board; (b) precluded him from having a full and fair opportunity to solicit proxies in favor of his retention on the APOL [*sic*] Board; (c) precluded him from serving as a director of chinadotcom, and thereby prevented him from attempting to exercise influence on the policies and direction of the company; and (d) essentially disenfranchised him (as well as chinadotcom's other stockholders) by causing him and them to believe that they were participating in an uncontested election of directors when, in fact, the election was opposed." (R. 18-1, Pl.'s Mot. for Leave to Am. Compl. Ex. A ¶ 38.)

This Court declines to extend the ruling of the Seventh Circuit and create a new cause of action under Section 13(d) for former directors whom management has ousted. If there is a spectrum of shareholder sophistication, with "unsuspecting investors" on one end, and "well-informed members of management who can adequately protect their own interests" on the other, then Edelson certainly lies closer to management than to the common shareholder. *See Mates*, 53 F. Supp. 2d at 825. Because the legislature did not intend former directors to wield Section 13(d) on their own behalf, Plaintiff's Count I is dismissed and Plaintiff's motion to amend is denied with respect to Counts I and II.

### III. Tortious Interference

Plaintiff seeks to amend his claim of tortious interference with prospective business advantage against Defendants Yip and Ch'ien to add Defendant Chinadotcom.[7] Plaintiff's allegations against Chinadotcom focus on a subsequent lawsuit brought by Chinadotcom against Edelson in Hong Kong and a related press release issued by Chinadotcom. Plaintiff alleges that he had a reasonable expectation to be nominated to the boards of additional entities. Because of the damage to his reputation caused by Defendants' alleged activities, Plaintiff asserts that Defendants have interfered with this expectation. Defendant Chinadotcom[8] argues that under

---

[7] The Court has dismissed the federal-question claims in this action. The Court retains diversity jurisdiction, however, as complete diversity exists between a New Jersey Plaintiff and foreign Defendants, and the alleged amount in controversy is sufficient. 28 U.S.C. § 1332(a)(2).

[8] Defendants Yip and Ch'ien have not moved for dismissal of Plaintiff's tortious interference claims against them. There is a dispute as to whether Yip and Ch'ien have been properly served. Plaintiff argues that Yip and Ch'ien have waived any objection to lack of service because Chinadotcom and the individual Defendants share counsel, who has appeared and participated in this action. Defendant maintains that Yip and Ch'ien are not properly before this Court without having been served.

New Jersey law a tortious interference claim based on the filing of a lawsuit would fail under a Rule 12(b)(6) motion to dismiss.[9] Further, Chinadotcom argues that the doctrine of *forum non conveniens* would also require the dismissal of such a claim. Because these claims would fall prey to dismissal motions, Chinadotcom argues that the Court should not allow their addition to Plaintiff's Complaint.

## A. The Litigation Privilege is Inapplicable

Chinadotcom claims that New Jersey law provides a litigation privilege that protects litigants from being sued for tortious interference based on statements made during a proceeding. In a single footnote, Defendant argues, without providing any authority, that "[b]ecause the filing of the lawsuit is immunized, Edelson cannot be heard to complain that the issuance of a press release discussing this litigation — a matter of public record and of concern to its shareholders — is actionable conduct on chinadotcom's part." Plaintiff, on the other hand, responds that Chinadotcom's press release concerning its Hong Kong lawsuit is not governed by the litigation privilege cited by Chinadotcom.[10] The Court agrees.

---

[9] Chinadotcom asserts, and Plaintiff does not object, that under Illinois choice-of-law rules, the substantive law of the State of New Jersey governs the tortious interference claim in this case. "A court sitting in diversity applies the choice-of-law rules of the state in which it sits." *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503 (7th Cir. 1998). Illinois law places significant weight on the location of the injury, which in this case is New Jersey, where the alleged injury to reputation was felt. *Medline Indus., Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d 857, 864 (N.D. Ill. 2002). The Court will analyze the validity of Plaintiff's tortious interference claim with respect to New Jersey state law.

[10] Plaintiff does not respond directly to the litigation privilege argument, but rather points to the out-of-court statements made by Defendant. The litigation privilege applies to the actual litigation proceedings pending in Hong Kong. To the extent Plaintiff's tortious interference claim relies on the litigation proceedings — and not out-of-court statements — Plaintiff's claim is dismissed.

13

While it is true that statements made during litigation are protected from defamation and tortious interference suits, the same is not true for out-of-court statements made about litigation. "A full, fair and accurate report of a judicial proceeding is qualifiedly privileged, although the report contains matters that would otherwise be defamatory and actionable, and no action will lie therefor except on proof of malice in making it." *Cappello v. Scott*, 274 N.J. Super. 282, 284, 644 A.2d 102, 103 (N.J. Super. A.D. 1994). In New Jersey, a tortious-interference plaintiff must show: "(1) that it had a reasonable expectation of an economic advantage; (2) that was lost as a direct result of defendants' malicious interference; and (3) that it suffered losses thereby." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 205 F. Supp. 2d 306, 320 (D.N.J. 2002). Plaintiff has plead these elements in connection with the press release issued by Chinadotcom. With respect to this claim, Chinadotcom has not shown that under no set of facts would plaintiff's allegations entitle him to relief. *Pope v. Smith-Rothchild Financial Co.*, No. 03 C 3335, 2003 WL 22889377, *2 (N.D. Ill. Dec. 8, 2003); *see Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). Plaintiff's claim of tortious interference against Chinadotcom would therefore survive dismissal, and this Court will not bar amendment based on Defendant's Rule 12(b)(6) objection.

### B.     *Forum Non Conveniens* Does Not Prevent the Claim

Turning to Defendant's second objection, "[a] *forum non conveniens* analysis takes place in two steps. First, the court must determine whether an adequate alternative forum is available; second, it must weigh several private and public interest factors related to the proper location for the litigation." *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 643 (7th Cir. 2003); *see Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 718 (7th Cir. 2002). The movant must overcome the strong

14

presumption in favor of the plaintiff's choice of forum. *See Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990).

While Defendant can show that Hong Kong is an adequate alternative forum for the remaining claim, its arguments in favor of public and private interests cannot overcome the strong presumption that Illinois is the appropriate forum. Defendant argues that this claim will turn on issues of Hong Kong law because it is intertwined with the Hong Kong action against Edelson. Tortious interference claims based on Defendants' press release or the activities that supported Plaintiff's purported Section 13(d) claim are not contingent on the outcome of any Hong Kong court proceeding.[11] It is not clear, therefore, that Hong Kong has any superior public interest in hearing this dispute.

Similarly, the private interests of the litigants do not outweigh the presumption in favor of Illinois. The Plaintiff is a United States citizen whose choice of venue is entitled to deference. Although Defendant Chinadotcom operates in Hong Kong, it is incorporated in the Cayman Islands. Yip and Ch'ien are residents of Hong Kong, but there has been no showing that continuing this proceeding in Illinois would have any adverse effect on them. In sum, the private interests of the litigants weigh in favor of keeping the lawsuit in Illinois. Defendant's forum objections fail, and Plaintiff's motion to amend his Complaint is granted with respect to his claim against Chinadotcom for tortious interference with prospective business relations.

---

[11] Defendant Chinadotcom does not consider the effect of the claims against the individual Defendants.

## CONCLUSION

Plaintiff's motion for preliminary injunction is denied. Plaintiff's motion for leave amend his Complaint is granted in part and denied in part. Count I of the original Complaint is dismissed. Plaintiff can amend his Complaint consistent with this opinion with respect to proposed Count III only.

Dated: January 28, 2004        ENTERED

*[signature]*
AMY J. STUEVE
United States District Court Judge