# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7320 | **DATE** | 1/11/2005 |
| **CASE TITLE** | Edelson vs. Ch'ien | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The Court lacks the power to exercise personal jurisdiction over Ch'ien and therefore grants Ch'ien's motion pursuant to Rule 12(b)(2), dismissing Ch'ien from this case. Because this Court lacks personal jurisdiction over Ch'ien it cannot address his motion to dismiss pursuant to Rule 12(b)(6) and his motion to strike immaterial matter. Those motions are denied as moot. The Court denies Chinadotcom's motion to dismiss pursuant to Rule 12(b)(6).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JAN 11 2005 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 71 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH✓ | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HARRY EDELSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 7320 |
| | ) | |
| RAYMOND K.F. CH'IEN, PETER YIP | ) | |
| HAK YUNG, ASIA PACIFIC ONLINE | ) | |
| LTD., and CHINADOTCOM | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Harry Edelson ("Edelson") filed his Second Amended Complaint alleging

tortious interference with prospective economic advantage against Defendants Raymond K.F.

Ch'ien ("Ch'ien"), Peter Yip Hak Yung ("Yip"), Asia Pacific Online, Ltd. ("Asia Pacific"), and

chinadotcom corporation ("Chinadotcom"). Ch'ien moves to dismiss the Second Amended

Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2), and for failure to state a

claim, pursuant to Rule 12(b)(6), and in the alternative, to strike immaterial matter, pursuant to

Rule 12(f). Chinadotcom separately moves to dismiss the Second Amended Complaint for failure

to state a claim pursuant to Rule 12(b)(6). For the reasons discussed below, the Court grants in

part Ch'ien's motion and denies Chinadotcom's motion.

## BACKGROUND

For purposes of this Opinion, the Court presumes the following allegations as true.

## I.    Parties

Edelson is a citizen of New Jersey.  (R. 53-1; Sec. Am. Compl. ¶1.)  He is the former outside, independent non-management director of Chinadotcom.  (*Id.*)  Since January 1999, Edelson has served as a non-executive director of Chinadotcom.  (*Id.*)  Edelson has also served in a variety of other capacities for Chinadotcom and its various subsidiaries.  (*Id.*)  He is also a stockholder of Chinadotcom.  (*Id.*)

Edelson is also a venture capitalist.  (*Id.*)  He is the founding partner of Edelson Technology Partners, a high technology venture capital partnership assisting multinational corporations.  (*Id.*)  Over his 30-year career, Edelson has served on the Board of Directors of numerous privately and publicly held companies, in addition to Chinadotcom.  (*Id.* ¶8.)  Edelson relies on connections made during his business career, as well as his reputation in order to raise funds.  (*Id.*)

Ch'ien was, at all times relevant, the Executive Chairman of the Board of Directors of Chinadotcom.  (*Id.* ¶3.)  He is a citizen and resident of Hong Kong.  (*Id.*)

Chinadotcom is a corporation formed and existing under the laws of the Cayman Islands.  (*Id.* ¶5.)  Its principal place of business is in Hong Kong.  (*Id.*)  Chinadotcom is an integrated enterprise solutions company offering software services and outsourcing, technology, marketing, and media services and content for companies and end users throughout the greater China and the Asia-Pacific region, the United States, and the United Kingdom.  (*Id.*)

## II.    The Press Release

Shortly after Edelson filed his Complaint in this case, Chinadotcom filed a Statement of Claim in the High Court of the Hong Kong Special Administrative Region, Court of First

Instance, Action No. 4004 of 2003 (the "Hong Kong Action"), against Edelson and Edelson Technology Partners. (R. 53-1; Sec. Am. Compl. ¶10.) Chinadotcom alleged breach of fiduciary duty and breach of Chinadotcom's insider trading policy. (*Id.*) Edelson disputes Chinadotcom's allegations in the Hong Kong Action, arguing that they are baseless and filed for no other reason than to retaliate against Edelson for filing this action. (*Id.*)

Around the time it filed the Hong Kong Action, Chinadotcom issued a press release on its website (www.corp.china.com) entitled "chinadotcom reports fourth consecutive quarter of US GAAP profit, revenues up 10% year-on-year, and net income of US $6.1 million" (the "Press Release"). (*Id.* ¶11.) In the section titled "Other Developments," the Press Release states in part:

> The company recently filed a claim in the courts of Hong Kong against former board member, Harry Edelson and his affiliated fund seeking damages related to the alleged breach of fiduciary duties owed to the company and violations of the company's insider trading policy. The company also recently became aware that Mr. Edelson has filed an action against the company and certain board members and one shareholder alleging claims that relate principally to his disagreement with the results of this year's annual shareholders meeting whereby he was not re-elected by shareholders to the chinadotcom board of directors.

(*Id.* ¶11, Ex. B.) Based on information and belief from Edelson's experience on the Chinadotcom Board, Edelson alleges that Yip and Ch'ien directed the preparation and dissemination of the above-quoted portion of the Press Release. (*Id.* ¶12.) Edelson alleges the Press Release is inaccurate and misleading in a variety of aspects. (*Id.* ¶13-16.)

Edelson alleges the Press Release has "thrown a taint on" his character and abilities, and "clouded his reputation in a public and embarrassing way." (*Id.* ¶13.) Despite past success in raising money for various funds, after the Press Release, Edelson has been unable to raise money for his most recent fund. (*Id.* ¶17.) Edelson contends the Press Release is readily available to the

entire world and that it is impossible for him to attract investment funds. (*Id.* ¶18.) Edelson alleges that Defendants made the statements in the Press Release "with malice, with vindictiveness, and purely for revenge." (*Id.* ¶19.)

## III.  History of this Action

Edelson filed his complaint on October 15, 2003 alleging violations of Section 13(d) of the Securities Exchange Act of 1934 and tortious interference with an economic advantage. Plaintiff also moved for a preliminary injunction. (R. 1-1; Compl.) Chinadotcom filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) arguing that (1) Edelson failed to allege any wrongdoing on the part of Chinadotcom, and (2) Edelson, as an ex-director of Chinadotcom, lacked standing to sue under Section 13(d). (R. 16-1; Chinadotcom's Mot. to Dismiss Compl.) In response, Edelson sought leave to file an amended complaint containing further allegations with respect to Chinadotcom's conduct. (R. 18-1; Pl.'s Mot. for Leave.) Chinadotcom opposed Edelson's motion for leave on the basis that the amendments were futile and still failed to state a claim. (R. 20-1; Chinadotcom's Opp. to Pl.'s Mot. for Leave; R. 23-1; Chinadotcom's Supp. Opp. to Pl.'s Mot. for Leave.) On January 28, 2004, the Court denied Edelson's Motion for Preliminary Injunction, granted Edelson's Motion for Leave to Amend its Complaint with respect to the tortious interference claim, and dismissed Edelson's claim for Section 13(d) violations. *Edelson v. Ch'ien*, No. 03 C 7320, 2004 WL 422674 (N.D. Ill. Jan. 28, 2004). Edelson appealed the Court's dismissal of its Section 13(d) claims to the Seventh Circuit. That appeal is still pending.

After Edelson filed his Amended Complaint (R. 32-1; Am. Compl.), Chinadotcom filed a motion to strike the Amended Complaint for failing to comply with the Court's prior Order. (R. 34-1; Chinadotcom's Mot. to Dismiss Pl.'s Am. Compl.) The Court granted Chinadotcom's

4

motion, striking the Amended Complaint and granting leave for Edelson to file a second amended complaint consistent with the Court's Order of January 28, 2004. (R. 48-1; Order.) Edelson filed its Second Amended Complaint on May 17, 2004 alleging a single claim of tortious interference with an economic advantage. (R. 53-1; Sec. Am. Compl.) Ch'ien filed a motion: (1) to dismiss for lack of personal jurisdiction; (2) to dismiss for failure to state a claim; and (3) to strike immaterial matter. (R. 57-1; Ch'ien Mot. to Dismiss.) Chinadotcom separately filed a motion to dismiss the Second Amended Complaint pursuant to 12(b)(6). (R. 58-1; Chinadotcom's Mot. to Dismiss Sec. Am. Compl.)

## ANALYSIS

### I.     Ch'ien's Motion to Dismiss for Lack of Personal Jurisdiction

#### A.     Rule 12(b)(2) Standards

A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction tests whether a federal court has personal jurisdiction over a defendant. *See* FED.R.CIV.P. 12(b)(2). A plaintiff bears the burden of demonstrating the existence of personal jurisdiction over a defendant. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997). A plaintiff need only make a prima facie showing that jurisdiction over a defendant is proper. *Michael J. Neuman & Assoc., Ltd. v. Florabelle Flowers, Inc.*, 15 F.3d 721, 724-25 (7th Cir. 1994). In determining whether a plaintiff has met this burden, a court must resolve all factual disputes in the plaintiff's favor and accept as true all uncontroverted allegations made by both plaintiffs and defendants. *Saylor v. Dyniewski*, 836 F.2d 341, 342 (7th Cir. 1988); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *Allman v. McGann*, No. 02 C 7442, 2003 WL 1811531 at *2 (N.D. Ill. Apr. 4, 2003).

A federal court's exercise of personal jurisdiction over a non-resident defendant is proper

5

"only if a court of the state in which it sits would have such jurisdiction." *Klump v. Duffus*, 71

F.3d 1368, 1371 (7th Cir. 1995) (quoting *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239,

1243 (7th Cir. 1990)). Thus, the Court has jurisdiction "only if [an Illinois State Court] would

have such jurisdiction." *Id.* Any exercise of jurisdiction over a defendant must comport with

state statutory law, state constitutional law, and federal constitutional law. *RAR, Inc.*, 107 F.3d at

1276.

The Illinois long-arm statute, 735 ILCS 5/2-209, provides for personal jurisdiction over a

non-resident who commits certain enumerated acts. Because the Illinois long-arm statute

authorizes the exercise of personal jurisdiction to the extent allowed under federal due process[1],

"the three inquiries collapse into two constitutional inquiries – one state and one federal." *Id.*

But because the Seventh Circuit has found that "there is no operative difference between the

limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction," one

due process inquiry suffices. *Hyatt Int'l Corp v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing

*RAR, Inc.*, 107 F.3d at 1276; *Klump*, 71 F.3d at 1371 n. 4). *See also Janmark, Inc. v. Reidy*, 132

F.3d 1200, 1202 (7th Cir. 1997).

The federal test for personal jurisdiction requires that the defendant must have minimum

contacts with the forum state "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310,

316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "[I]t is essential in each case that there be some act by

which the defendant purposefully avails itself of the privilege of conducting activities within the

_____

[1]The Illinois long-arm statute provides in relevant part: "A court may also exercise
jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the
Constitution of the United States." 735 ILCS 5/2-209(c).

forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The Supreme Court has labeled two types of jurisdiction – "general" and "specific" – that minimum contacts can establish. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16, 104 S.Ct. 1868, 80 L.Ed. 404 (1984). General jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state. *Id.* at 416. If such contacts exist, "the court may exercise personal jurisdiction over the defendant even in cases that do not arise out of and are not related to the defendant's forum contacts." *Hyatt Int'l*, 302 F.3d at 713. On the other hand, specific jurisdiction is more limited. *Id.* Specific jurisdiction exists when the "litigation arises out of or is related to [the defendant's contacts with the forum state]." *Logan Productions v. Optibase*, 103 F.3d 49, 52 (7th Cir. 1996). Here, Edelson only argues that specific jurisdiction exists.

### B.     Illinois Long Arm Statute

The Illinois Long Arm Statute authorizes an Illinois court to exercise personal jurisdiction over a non-resident "who in person or through an agent [engages in] [t]he commission of a tortious act within this State; []." 735 ILCS 5/2-209(a)(2). Regarding a claim for tortious interference with economic advantage, the tort occurs, where the injury occurs. *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). As this Court noted in its earlier Opinion, 2004 WL 422674, *6, n.9, the location of injury in this case is New Jersey, where Edelson is located. *See Medline Indus., Inc. v. Maersk Med. Ltd.*, 230 F.Supp.2d 857, 864 (N.D. Ill. 2002) (holding that the alleged place of injury was Illinois, where the plaintiff's principal place of business was located and where the economic impact of the tortious interference would be felt). Edelson has not

7

alleged the commission of any tortious act in the state of Illinois and therefore, does not satisfy Section 2-209(a)(2) of the long-arm statute.

Alternatively, even if the economic injury did occur in Illinois, the Court determines that Edelson did not allege or argue that Ch'ien had an intent to affect an Illinois interest. Courts traditionally require that to establish jurisdiction under the long-arm statute, the plaintiff must allege that the defendant had an "intent to affect Illinois interests." *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 282 (7th Cir. 1990) (finding that defendant intended to affect an Illinois interest because it made repeated phone calls to Illinois during which the alleged tortious misrepresentations were made and defendant knew the calls were going to Illinois); *Real Colors, Inc. v. Patel,* 974 F.Supp. 645, 649 (N.D. Ill. 1997) ("Where the injury is merely economic, rather than physical or emotional, the plaintiff needs to show more than the "harm [was] felt" in Illinois;" the plaintiff must also show an "intent to affect an Illinois interest.")[2] Here, Edelson does not even argue that Ch'ien intended to affect an Illinois interest, and therefore exercising personal jurisdiction over Ch'ien would not comport with Section 2-209(a)(2) of the long-arm statute.

## C. Constitutional Analysis

The Illinois long-arm statute also provides that an Illinois court may exercise personal jurisdiction to the extent permitted by the United States Constitution. 735 ILCS 5/2-209(c)[3].

---

[2]Although the *Real Colors* court treated this as a separate requirement of the long-arm statute, it is also another way of wording the requirement under the due process clause that the defendant "purposefully avail" himself of the forum state's benefits. *Burger King Corp.,* 471 U.S at 477-78, 105 S.Ct. 2174.

[3]As noted above, the long-arm analysis and due process analysis could be treated as a single analysis, but because the parties addressed these separately, the Court does so as well.

8

Therefore, the Court may exercise personal jurisdiction over Ch'ien if he has purposefully established minimum contacts in Illinois, *Burger King Corp.*, 471 U.S. at 474, such that exercising personal jurisdiction would not offend "traditional notions of fairplay and substantial justice." *International Shoe*, 326 U.S. at 316. Edelson argues that the following list of alleged contacts establishes the Court's personal jurisdiction over Ch'ien: (1) Ch'ien "dominates" Chinadotcom's activities; (2) "Chinadotcom does business in this district" by offering access, via the Internet, to an Internet portal for the purpose of accessing Asian markets; (3) Chinadotcom has institutional shareholders, and solicits proxies, in this district; (4) "Ch'ien directed and controlled the business activities of Chinadotcom in this district"; (5) Ch'ien prepared and disseminated the Press Release on Chinadotcom's website; and (6) Edelson conducts venture capital activities, and solicits funds, in this district, and Ch'ien's tortious conduct has impaired and impeded Edelson's efforts in this district to raise capital.

### 1.     Chinadotcom's Business Activities and Shareholders

Edelson argues that Chinadotcom's business (whether or not "dominated by Ch'ien"), the presence of Chinadotcom's shareholders, and Chinadotcom's solicitation of proxies in this district establish minimum contacts with Illinois sufficient to satisfy the Due Process Clause. Edelson, however, is only asserting specific jurisdiction over Chien – not general jurisdiction. *See Hyatt Int'l*, 302 F.3d at 713 (because the plaintiff did not assert that Illinois could assert general jurisdiction, "we consider only the propriety of specific jurisdiction, a more limited assertion of state power"). To establish specific jurisdiction, the Court only analyzes those contacts from which the cause of action arises. *See Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998) ("To satisfy due process, specific jurisdiction requires that the suit 'arise out

of' or 'be related to' these minimum contacts with the forum state.")

Here, Edelson asserts that Ch'ien tortiously interfered with Edelson's prospective economic advantage by posting the press release on Chinadotcom's website. This cause of action does not arise from or relate to Chinadotcom's business, shareholders, or solicitation of proxies in this district. Therefore, the Court does not consider these alleged contacts in analyzing whether it may exercise specific personal jurisdiction over Ch'ien.

### 2. The Press Release on Chinadotcom's Website

Edelson argues that it has alleged that Ch'ien had ultimate responsibility for Chinadotcom's dissemination of the press release into Illinois via the Internet. Ch'ien responds that the Chinadotcom website is not "active" and therefore, the press release on the website is not a cognizable basis for specific personal jurisdiction. According to Edelson, however, the Chinadotcom website is at least partially "active" because it (1) provides links to obtain information about Chinadotcom; (2) describes Chinadotcom's products and services; (3) contains "Investor Relations" information; (4) contains financial information; and (5) provides e-mail links to stock analysts and company representatives or partners.

The Court agrees with Ch'ien. The Chinadotcom website, as described by Edelson, is not the type of "active" website that permits specific personal jurisdiction. The Seventh Circuit recently confirmed that "a defendant's maintenance of a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." *Jennings v. AC Hydraulic*, 383 F.3d 546 (7ᵗʰ Cir. 2004). In *Jennings*, the plaintiff's deceased husband was fatally injured at work when a forklift fell on him. The plaintiff sued her deceased husband's employer and the case was removed to federal court in Indiana.

Plaintiff alleged specific personal jurisdiction in part because of the employer's operation of an English-translated website that advertised the same type of forklift involved in the accident. The Seventh Circuit categorized this website as "passive" and therefore not conferring personal jurisdiction over the employer in Indiana.

While the Seventh Circuit declined to address the analysis for determining whether a website is "passive" or "active," the court did note that it was "join[ing] the several circuits that have addressed [the issue of passive websites.]" *Jennings*, 383 F.3d at 550 (citing *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712-13 (4th Cir. 2002); *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1297 (10th Cir. 1999); *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 337 (5th Cir. 1999)). The *ALS, Soma,* and *Mink* cases cited in *Jennings,* all apply the "sliding scale" test set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997), to determine whether a website is "passive" or "active." Other courts in this district have also adopted the *Zippo* approach. *NeoMedia Techs., Inc. v. AirClic, Inc.*, No. 04 C 566, 2004 WL 848181, *3 (N.D. Ill. Apr. 16, 2004); *Softee Mfg., LLC v. Mazner,* No. 03 C 3367, 2003 WL 23521295, *5 (N.D. Ill. Dec. 18, 2003); *Berthold Types Ltd. V. Eur. Mikrograf Corp.*, 102 F.Supp.2d 928, 931-32 (N.D. Ill. 2000). Under the "sliding scale" approach, a defendant's Internet activity falls under one of three categories. When the "defendant clearly transacts business in foreign jurisdictions over the Internet," a court may exercise personal jurisdiction over the website operator. *Berthold,* 102 F.Supp.2d at 932 (internal citations omitted). On the opposite end of the scale is the situation where a defendant posts "information on the Internet, but has no further communication with potential customers via the Internet." *Id.* With this category, courts may not exercise personal jurisdiction over the website operator on the

11

basis of the website alone. In the middle category, "the defendant operates an interactive web site that allows defendant and potential customers in foreign jurisdictions to communicate regarding defendant's goods or services." *Id.* In this category, the court considers "the level of interactivity and the commercial nature of the exchange of information" in determining whether to exercise jurisdiction. *Id.*

In this case, Edelson argues that Chinadotcom's website falls in the middle category of websites, but has sufficient interactivity for the Court to exercise personal jurisdiction. The examples of interactivity provided by Edelson, however, are not the type of interactivity that courts have viewed as allowing them to exercise personal jurisdiction. Providing information about a company and its products and services is plainly not the kind of interactivity that confers the power to exercise personal jurisdiction. *Jennings,* 383 F.3d at 549-50 ("it is enough to say that this logic certainly does not extend to the operation of a "passive" website [] which merely makes available information about the company and its products"). Moreover, providing e-mail links[4] for customers to contact the company typically does not make a website "active." *Softee,* 2003 WL 23521295 at *6; *Trost v. Bauer,* No. 01 C 2038, 2001 WL 845477, *11 (N.D. Ill. July 24, 2001); *also see Mink,* 190 F.3d at 337 (cited in *Jennings,* 383 F.3d at 550.) Notably, Edelson does not present evidence or argue that the website enables anyone to perform any transaction. Nor does Edelson present evidence or argue that the press release was ever e-mailed or

---

[4]It is also worth noting that Edelson does not allege in its Second Amended Complaint the features of Chinadotcom's website that he contends render it an "active" website. Also, the Chinadotcom website is not properly in the record, and the Court declines to exercise personal jurisdiction over Ch'ien on the basis of Chinadotcom's website for that reason alone. *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines,* 262 F.Supp.2d 898, 904 (N.D. Ill 2003) (the Court may consider affidavits and other evidence in the record in deciding a Rule 12(b)(2) motion).

12

purposefully pointed out to anyone. Therefore, the posting of the press release on Chinadotcom's website does not qualify as Ch'ien "purposefully establish[ing] minimum contacts within the forum State." *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. 2174. Accordingly, this Court may not exercise specific personal jurisdiction over Ch'ien on the basis that he directed the posting of the press release on Chinadotcom's website.

## II.     Ch'ien's Motion to Dismiss for Failure to State a Claim and Motion to Strike Immaterial Matter

Because the Court lacks personal jurisdiction over Ch'ien, it cannot address his Motion to Dismiss for Failure to State a Claim and Motion to Strike Immaterial Matter. The Court denies these motions as moot.

## III.     Chinadotcom's Motion to Dismiss for Failure to State a Claim

Chinadotcom moves to dismiss Edelson's Second Amended Complaint for failing to state a claim pursuant to Rule 12(b)(6). Chinadotcom first argues that the press release at issue is privileged under New Jersey law. Chinadotcom next argues that Edelson has failed to properly allege several elements of a claim for tortious interference with prospective economic advantage under New Jersey law. Finally, Chinadotcom argues that Edelson is still basing its cause of action on the filing of the Hong Kong Complaint in violation of the Court's January 28, 2004 Order.

### A.     Rule 12(b)(6) Standards

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.,* 892 F.2d 583, 586 (7th Cir. 1989). A court must accept as true all well-plead allegations of a

13

complaint. *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). Courts construe ambiguities in favor of the plaintiff. *Id.*

## B.    The Litigation Privilege Under New Jersey Law[5]

Chinadotcom cites *Medphone Corp. v. Denigris*, Civ. No. 92-3785, 1993 U.S.Dist. LEXIS 21266, *6 (D.N.J. July 28, 1993), in arguing that statements about litigation made in a press release are absolutely privileged. In New Jersey, an absolute privilege applies to "communications (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Hawkins v. Harris*, 141 N.J. 207, 216 (1995). The federal court in *Medphone* applied this absolute privilege to a press release about a lawsuit. Edelson counters that only statements made during the course of a judicial proceeding are absolutely privileged and statements made in a press release about the litigation are only qualifiedly privileged, citing *Cappello v. Scott*, 274 N.J.Super. 282, 644 A.2d 102 (App.Div. 1994).[6] The New Jersey state appellate court in *Capello* held that the absolute privilege does not apply to statements made about the lawsuit but outside the confines of the lawsuit itself.

The Court finds that *Medphone* is distinguishable from the facts of this case. In

_____

[5]As discussed in the Court's January 28, 2004 Order, *Edelson*, 2004 WL 422674, *6, n.9, the parties agree that New Jersey law applies.

[6]The Court has already found *Cappello* persuasive. *Edelson*, 2004 WL 422674, *6. Chinadotcom argues that at the time this issue was raised with the Court, it did not have an opportunity to fully brief the applicability of an absolute privilege to the press release because it did not realize Edelson was basing its claim against Chinadotcom on that press release. The Court recognizes Chinadotcom's understanding of Edelson's allegations in this case and therefore addresses Chinadotcom's new arguments, in particular its reliance on the *Medphone Corp.* decision. Nonetheless, the Court does so, while still recognizing that the Court has already decided that the *Cappello* decision presents persuasive reasoning.

*Medphone*, the press release read, "in a complaint filed Friday, September 11, Medphone said Denigris since mid-April had engaged in a 'systematic program of defamation and trade disparagement' against the company, its products, management and stock." *Id* at *2. The New Jersey federal court found it important that the "press release informs the public that plaintiff filed this suit and communicates the gravamen of the complaint using direct quotes from the pleadings." 1993 U.S. Dist. LEXIS 21266, *6. From the face of Edelson's pleadings, the same cannot be said for Chinadotcom's press release, which does not directly quote from the Hong Kong complaint.[7] Accordingly, the Court does not believe that the New Jersey Supreme Court would find, from the pleadings alone, the Chinadotcom press release to be a part of the judicial proceedings such that it would be subject to New Jersey's absolute privilege.

### C. The Fair Report Privilege Under New Jersey Law

Even though the press release, from the face of Edelson's pleadings, is not absolutely privileged, it may still be qualifiedly privileged under New Jersey's fair report privilege. "A full, fair and accurate report of a judicial proceeding is qualifiedly privileged, although the report contains matters that would otherwise be defamatory and actionable, and no action will lie therefor except on proof of malice in making it." *Cappello*, 274 N.J.Super. at 284, 644 A.2d at 103. Chinadotcom argues that Edelson has not adequately alleged that the press release was issued with malice because "bare, conclusory alelgations of malice are insufficient to negate a privilege." *Altman v. Viccaro*, No. 89 C 5803, 1992 U.S.Dist. LEXIS 1455, *9 (N.D.Ill. February 7, 1992). Edelson disagrees, pointing to various portions of the Second Amended

---

[7]In light of *Medphone*, the Court does not rule out the possibility that discovery could show that the press release was so related to the judicial proceeding such that it could be absolutely privileged under New Jersey law.

Complaint that allege Chinadotcom's motivation for issuing the press release.

The Court agrees with Edelson that he has adequately alleged that Chinadotcom acted with malice in issuing the press release. "While bare, conclusory allegations of malice are insufficient to negate a privilege, allegations are sufficient if they allow the inference that the alleged tortfeasor acted with a desire to harm which was unrelated to the interest he or she was presumably seeking to protect." *Altman*, 1992 U.S.Dist. LEXIS 1455, *9. Edelson has alleged that the press release was "deliberately designed to create the misimpression that Edelson filed a claim based on his 'disagreement' with the results of the Annual General Meeting only after, and implicitly in retaliation for, Chinadotcom's filing of the Hong Kong Action against Edelson." (R. 53-1, Sec. Am. Compl. ¶15.) Edelson also alleges that "[t]he press release was a deliberate and malicious weapon used to inflict damage on Edelson in retaliation for Edelson's filing of the action." (*Id.* ¶16.) These allegations at least create a reasonable inference that Chinadotcom acted with a desire to harm Edelson and this desire was unrelated to any legitimate goal Chinadotcom was seeking to accomplish in issuing the press release. *See Altman*, 1992 U.S.Dist. LEXIS 1455, *9. Accordingly, it is not clear from Edelson's pleadings that the fair report privilege applies to Chinadotcom's press release.

### D. Edelson's Allegation of the Elements of a Claim for Tortious Interference with Prospective Economic Advantage

Chinadotcom raises three elements of a tortious interference with economic advantage claim that it contends Edelson has failed to sufficiently allege. First, Chinadotcom argues that Edelson's allegations of his prospective economic advantage are not specific enough to support a cause of action for tortious interference under New Jersey law. The Court disagrees. Edelson

16

alleges that he "had a reasonable expectancy that he would be nominated to the Boards of additional entities, and that he would garner additional business opportunities as a result of those directorships." (R. 53-1; Sec. Am. Compl. ¶20.) Edelson also alleges that "[d]uring the course of his 30-year business career, [he] has served on the Board of Directors of numerous privately and publicly held companies (in addition to Chinadotcom)." (*Id.* ¶8.) Edelson further explains that he was planning to parlay these "valuable contacts" into future business opportunities, including raising a "venture capital fund with philanthropic goals." (*Id.* ¶¶8,9.) Under New Jersey law, a plaintiff must specify some reasonable expectation of economic advantage that it has lost.[8] *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co., Inc.*, 205 F.Supp.2d 306, 320 (D.N.J. 2002). Taken as true, Edelson's allegations sufficiently set forth his reasonable expectation of economic advantage.

Second, Chinadotcom argues that Edelson has failed to allege that Chinadotcom was aware of Edelson's alleged expectation of economic advantage. Edelson, however, has alleged

---

[8]Chinadotcom appears to cite *Coast Cities Truck Sales, Inc. v. Navistar Intern. Transp. Co.*, 912 F.Supp. 747, 774 (D.N.J. 1995), for the proposition that a plaintiff alleging intentional interference with an economic advantage must allege the specific economic relationship that was interefered with, including the particular parties to that relationship. New Jersey's standard for pleading intentional interference, however, is not this strict. First, in *Coast Cities,* the Court noted that besides not setting forth the specific economic advantage, the plaintiff also did not even plead any wrongdoing on the part of the defendant. Second, *Coast Cities* cites *Printing Mart-Morristown v. Sharp Elecs. Corp,* 116 N.J. 739, 751-52, 563 A.2d 31 (N.J. 1989), in support of its language regarding the need to allege a "particular party." The *Printing Mart-Morristown* case, however, cites numerous cases where the properly alleged intentional interference claim involved a prospective economic advantage consisting of potential sales to the public in general. *Van Horn v. Van Horn,* 52 N.J.L. 284, 20 A. 485 (N.J. Sup. 1890) (interference with plaintiff's business of selling goods on consignment to public); *Hughes v. McDonogh,* 43 N.J.L. 459 (Sup.Ct. 1881) (interference with blacksmith's interest in selling his services to the public.) In other words, even the line of cases cited by *Coast Cities* recognizes that a plaintiff may sufficiently state a claim for tortious interference without providing any more specificity about the prospective economic advantage than what Edelson provides here.

that Chinadotcom "knew what [it was] doing in issuing the press release – they were striking at the heart of Edelson's business career." (R. 53-1, Sec. Am. Compl. ¶19.) Taken in conjunction with Edelson's other allegations related to Edelson's relationship with Chinadotcom and his plans to raise venture capital, an inference can be taken that Chinadotcom was aware of Edelson's prospective economic advantage – potential business relationships and venture capital sources.

Third, Chinadotcom contends that Edelson has failed to allege that Chinadotcom has maliciously interfered with any purported expectation of economic advantage. As discussed above, in section III.B., Edelson has properly alleged that Chinadotcom issued the press release with malice.

In sum, Chinadotcom has failed to show that under no set of facts would plaintiff's allegations entitle him to relief. *Pope v. Smith-Rothchiled Financial Co.*, No. 03 C 3335, 2003 WL 22889377, *2 (N.D. Ill. Dec. 8, 2003); *see Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Det. Ass'n*, 187 F.3d 6990, 695 (7th Cir. 1999). Edelson has, therefore, stated a cause of action for tortious interference with economic advantage under New Jersey Law.

### E.     Edelson's Allegations Related to the Filing of the Hong Kong Lawsuit

Chinadotcom argues that the Court should dismiss the Second Amended Complaint because it still contains allegations of tortious interference based on Chinadotcom's filing of the Hong Kong lawsuit that the Court has already dismissed from this case in its January 28, 2004 Order. As Chinadotcom points out, the Second Amended Complaint contains numerous references to the Hong Kong lawsuit. Edelson alleges that "[i]t is virtually impossible for anyone to raise money for a fund that has been accused and is being sued for insider trading and breach of

18

fiduciary duty." (R. 53-1; Sec. Am. Compl. ¶17.) Edelson also alleges that:

> No investor would give millions of dollars to a venture capitalist without first investigating the venture capitalist's reputation. [] Once an investor sees that Edelson has been accused and is being sued in Hong Kong for insider trading and breach of fiduciary duty, no matter how frivolous the allegation and the complaint might be, these money sources simply have and are going to continue to pass on investing in Edelson's venture fund.

(*Id.* ¶18.) Edelson then goes on to allege that "Chinadotcom [] knew what [it was] doing in issueing the press release – [] striking at the heart of Edelson's business career." (*Id.* ¶19.) The Court infers from these allegations that the thrust of Edelson's claim is that Chinadotcom made Edelson's potential business partners aware of misleading information via the press release and that these potential business partners would not have been aware of that information but for the press release. Therefore, Chinadotcom's references to the Hong Kong lawsuit are a part of its tortious interference claim related to the press release of that lawsuit. Chinadotcom is not attempting to state a separate cause of action based on the initiation of the Hong Kong lawsuit.

## CONCLUSION

The Court lacks the power to exercise personal jurisdiction over Ch'ien and therefore grants Ch'ien's motion pursuant to Rule 12(b)(2), dismissing Ch'ien from this case. Because this Court lacks personal jurisdiction over Ch'ien it cannot address his motion to dismiss pursuant to Rule 12(b)(6) and his motion to strike immaterial matter. Those motions are denied as moot.

The Court denies Chinadotcom's motion to dismiss pursuant to Rule 12(b)(6).


Dated:    January 11, 2005

ENTERED

_____
AMY J. ST EVE
United States District Court Judge